GARRISON, Judge.
This is an appeal from a judgment of the district court, finding that certain contracts entered into by plaintiff and defendant constituted “a financing agreement” rather than a sale and a lease. The court found as well that the intervenor’s collateral chattel mortgage primed the interests of any other party in the object at issue, a “Michigan Loader”. From that judgment, plaintiff appeals.
On June 6, 1978, T & J Services, Inc., (hereinafter “T & J”) entered into an agreement with Leasing Services, Inc., (hereinafter “Leasing Services”), whereby T & J agreed to lease from Leasing Services “(1) Michigan Loader, Model 55 CMA, Serial No. 416C397” for a period of three years for the price of $1,323.00 monthly. J. L. Romano, the President of T & J, also signed as a surety for the lessee.
On June 8, 1978, plaintiff and defendant entered into an agreement reading as follows:
“Seller T & J Services Inc. of P.O. Box 341 Hahnville, Louisiana, in consideration of Thirty-Five Thousand and No/100— ($35,000.00) — dollars, receipt whereof is hereby acknowledged; does hereby sell, assign, transfer, and set over to Buyer, Leasing Services, Inc. of 619 Jefferson Highway, Baton Rouge, Louisiana, the following described property, to-wit: ‘(1) Michigan Loader, Model 55 CMA, Serial No. 416C397.’
A check issued on June 6, 1978 to T & J by Leasing Services, in the amount of $35,-000.00, was deposited into the account of T & J on June 9, 1978 and cleared through Leasing Services’ account on June 13, 1978. A corporate resolution authorizing J. L. Romano “to sell to Leasing Services, Inc.. ..
(1) Michigan Loader Model 55CMA Serial No. 416C397” and “to sign and execute a Bill of Sale and any other necessary related documents ...”
was issued on June 5, 1978.
On December 15, 1978 T & J entered into a collateral chattel mortgage with the American Bank in Luling, Louisiana for the sum of $800,000.00. The exhibit to the mortgage contained a list of chattels so bound, including “Michigan Frontend Loader, Model 36FC, Serial No. 416C397.”
On September 4, 1979, Leasing Services sued T & J on the lease contract for the remainder of the term, obtaining a default judgment against Romano as surety, for the balance due. On December 11, 1979, Leasing Services filed a rule to show cause why the Michigan Loader should not be surrendered to it. On December 19, 1979 American Bank intervened, seeking to prevent Leasing Services from gaining possession of the loader.
At trial, an oral exception of no cause or right of action was made by intervenor on the basis of the default judgment against Romano. As counsel for T & J pointed out, the prior judgment had been taken against Romano as surety. The district court rendered judgment dismissing the exception and denying Leasing Services’ rule to obtain possession of the loader, finding not a lease and sale, but a mere “financing arrangement.” From that judgment, Leasing Services appeals.
*424 In his reasons for judgment, the judge placed considerable emphasis upon the obligations shouldered by T & J:
“From the testimony presented, mainly that of Joseph Romano, President of T & J Services, that T & J did not divest itself of ownership, insurance was paid by T & J as were all maintenance, repairs and taxes. He further testified that he felt he would keep equipment at the expiration of the lease...”
The trial court also looked to the following factors as also stated in the court’s written reasons for judgment:
“T & J Services owned the loader prior to the arrangements with plaintiff in June 1978. Also, the dates on the instruments offered as Exhibits indicate that the ‘lease agreement’ was dated June 8, 1978, two (2) days later. Another interesting fact is the stamp placed on the ‘lease’ in the lower left hand corner — ‘This loan is for business or commercial purposes’.
The court is of the opinion that this so-called ‘sale and lease-back’ between Leasing Services Inc. and T & J Services was really a financing arrangement disguised as a ‘sale and lease’ which would give the plaintiff some possible vendor’s privilege, however, this agreement was not recorded, thus the collateral chattel mortgage of the American Bank primes any interest Leasing Services may have.
In reviewing the entire transaction,
1.) the payment of $12,628 over the value of the loader
2.) the acceleration of all rental payments in the event of any default.
3.) the fact that T & J had and maintained the equipment with all incidents of ownership (repairs, taxes, insurance, etc.)
4.) the personal endorsement of Joseph Romano on the purported lease.
This court can only believe that the transaction was really not a “sale and lease”, but a financing arrangement between Leasing Services and T & J, which was not recorded; thus, plaintiff, Leasing Services, Inc. has no right for possession of the Michigan Loader.”
We agree with the conclusion of the trial judge that neither Leasing Services nor T & J intended that a transfer of ownership occur. We also agree with the conclusion of the trial judge that inasmuch as there was no intent to transfer ownership, no sale existed. Finally, we find, as did the trial judge, that the transaction constituted a financing agreement or loan. We further agree with the conclusion of the trial court that the loan was an attempt to provide unwarranted privileges, which are not allowed. We conclude that the loan is unsecured and thus primed by the collateral chattel mortgage of the American Bank.
For the reasons discussed, the judgment of the district court is affirmed.

AFFIRMED.

REDMANN, J., concurs with written reasons which are attached hereto.